UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RESORT CONDOMINIUMS          )
INTERNATIONAL, LLC,          )
     Plaintiff,          )
               )
v.          )
               )
BETHEL COMMODORE CORP.,      )
GIRI BANGOR, LLC,            )          No. 2:23-cv-00403-JAW
ALLEN CONNORS,               )
MISSY RASOR                  )
a/k/a MARY ELIZABETH HANTZ,  )
KERRY RASOR                  )
a/k/a KATHRYN E. RASOR, and  )
KATHY RASOR                  )
a/k/a KATHLEEN B. RASOR,     )
     Defendants.          )

**ORDER ON MOTION TO DISMISS**

A limited liability company sued a dissolved corporation, a limited liability company, and individual shareholders for damages and a declaratory judgment relating to the alleged breach of a resort affiliation and owners association agreement among the plaintiff, the corporate defendant, and an owners association. The plaintiff alleges that the limited liability company defendant assumed the corporate defendant's obligations under the owners association agreement before breaching the same by refusing to honor its obligations to book plaintiff's exchange guests and members. Plaintiff further alleges that the individual shareholder defendants are liable for the corporate defendant's breach of the agreement because they caused the corporate defendant to be dissolved and distributed its assets notwithstanding the

fact that the corporate defendant continued to have contractual obligations to the plaintiff under the agreement.

The limited liability corporation brought a third-party claim against a dissolved affiliate of the corporate defendant and a crossclaim against the corporate defendant and the individual shareholder defendants. The limited liability corporation defendant's third-party and crossclaims assert that, under an agreement executed among the limited liability corporation defendant, the corporate defendant, and the dissolved affiliate third-party defendant, it is entitled (in the event it is found liable) to indemnification and contribution from the corporate defendant, its dissolved affiliate, and the individual shareholder defendants.

The corporate defendant and individual shareholder defendants in turn bring two crossclaims against the limited liability corporation defendant. These defendants reject the limited liability corporation defendant's characterization of the agreement's indemnification and contribution obligations, and they instead assert that the agreement gives rise to indemnification and contribution obligations in their favor.

Presently before the court is the limited liability corporation defendant's (as crossclaim defendant) motion to dismiss the two crossclaims brought by the corporate defendant and the individual shareholder defendants pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court concludes that the breadth of the indemnification clause in the purchase and sale agreement includes operation of the property after closing, as may be implicated

by the underlying breach of contract claim against the crossclaim plaintiffs. The Court accordingly dismisses the motion to dismiss without prejudice.

## I.   PROCEDURAL BACKGROUND

On October 24, 2023, Resort Condominiums International, LLC (RCI) filed a complaint against Bethel Commodore Corporation (BCC), Giri Bangor, LLC (GB), and individual shareholders Allen Connors, Missy Rasor a/k/a Mary Elizabeth Hantz, Kerry Rasor a/k/a Kathryn E. Rasor, and Kathy Rasor a/k/a Kathleen B. Rasor in the United States District Court for the District of Maine, alleging breach of contract and dissolved corporation liability and seeking declaratory judgment. *See Compl.* (ECF No. 1). On November 21, 2023, GB filed a motion to dismiss pursuant to Rule 12(b)(6). FED. R. CIV. P. 12(b)(6); *Mot. to Dismiss* (ECF No. 12). RCI filed an amended complaint against all Defendants, including the Estate of Richard Drew Rasor, on December 12, 2023. *Am. Compl.* (ECF No. 16). On December 13, 2023, the Court ordered GB to notify the Court as to its intentions regarding the pending motion to dismiss. *Order* (ECF No. 18). On December 20, 2023, GB notified the Court it did not intend to proceed with the motion to dismiss. *Notice* (ECF No. 19). Accordingly, on December 20, 2023, the Court dismissed without prejudice the November 21, 2023 motion to dismiss. *Order* (ECF No. 20).

On January 11, 2024, Mr. Connors answered the amended complaint and asserted a crossclaim against GB. *Answer to Am. Compl. and Crosscl. of Def. Allen Connors* (ECF No. 27) (*Connors Crosscl.*). The Connors crossclaim argues that "[i]n the event Defendant/Crossclaim Plaintiff Allen Connors is found liable to Plaintiff,

he is entitled to contribution and/or indemnification from GB in an amount equal to the proportion of GB's fault" under the terms of the Agreement of Purchase and Sale (PSA) entered into by BCC and GB on or around November 22, 2022. *Id.* ¶¶ 26-29.

On January 17, 2024, GB answered the amended complaint, asserted a third-party complaint against the Bethel Inn and Country Club Corporation (BIC) and brought a crossclaim for contribution and indemnification against BCC and against Allen Connors, Estate of Richard Drew Rasor, Kathy Rasor, Kerry Rasor, and Missy Rasor (collectively, the Shareholder Defendants). *Def. Giri Bangor, LLC's Answer to Am. Compl. and Third-Party Compl. and Crosscl.* (ECF No. 28) (*GB Third Party Compl. and Crosscl.*).

On January 17, 2024, BCC, Estate of Richard Drew Rasor, Missy Rasor, Kerry Rasor, and Kathy Rasor (collectively, the BCC Crossclaimants) answered the amended complaint and entered a crossclaim against GB. *Answer and Crosscl. of Defs. Bethel Commodore Corp., Mary Elizabeth Rasor, Kathryn E. Rasor, Kathleen B. Rasor, and the Estate of Richard Drew Rasor* (ECF No. 29) (*BCC Crosscl.*). Like the Connors crossclaim, the BCC crossclaim asserts that the PSA "requires GB to indemnify BCC, BIC, and their princip[al]s (shareholders) against 'Damages' paid by or incurred by the indemnified parties." *Id.* ¶ 34. Mr. Connors answered GB's crossclaim on January 31, 2024. *Answer of Def. Allen Connors to Crosscl. of Def. Giri Bangor, LLC* (ECF No. 31).

On January 31, 2024, GB moved to dismiss both the Connors crossclaim and the BCC crossclaim under Rule 12(b)(6). *Def. Giri Bangor, LLC's Mot. to Dismiss*

4

*Crosscls.* (ECF No. 32) (*Mot. to Dismiss*).   On April 26, 2024, all Defendants (collectively, the Crossclaim Plaintiffs or Crossclaimants) jointly opposed the motion to dismiss. *Resp. in Opp'n* (ECF No. 43).   On May 31, 2024, GB replied. *Reply to Resp. to Mot.* (ECF No. 49) (*Reply*).

## II.   FACTUAL BACKGROUND[1]

Resort Condominiums International, LLC is a limited liability company. *Am. Compl.* ¶ 1.   RCI has two members: RCI General Holdco 2, LLC, and Wyndham Destination Network, LLC. *Id.*   Wyndham Destination Network, LLC is the sole member of RCI General Holdco 2, LLC. *Id.*   The sole member of Wyndham Destination Network, LLC is Travel and Leisure Co., a Delaware corporation with its principal place of business in Orlando, Florida. *Id.*

Crossclaimant BCC was a Maine corporation with its principal place of business in Bethel, Maine. *BCC Crosscl.* ¶ 1.   BCC was the majority owner of the Bethel Inn and Country Club (the Property) in Bethel, Maine. *Id.*   Crossclaimant Estate of Richard Drew Rasor is the estate of decedent Richard Drew Rasor, who was a shareholder of BCC. *Id.* ¶ 2.   Crossclaimants Missy Rasor (also known as Mary Elizabeth Rasor), Kerry Rasor (also known as Katheryn E. Rasor), and Kathy Rasor

---

[1]     Consistent with the motion to dismiss standard, the Court relied on the crossclaims' well-pleaded facts.   "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").
        The Court additionally relies on the amended complaint when the facts supplement those in the crossclaims and are not in dispute.

(also known as Kathleen B. Rasor) are Personal Representatives of the Estate of Richard Drew Rasor. *Id.* ¶¶ 3-5. Crossclaimant Allen Connors was a shareholder of BCC. *Connors Answer* ¶ 21.

Crossclaim Defendant GB is a limited liability company which is incorporated in Maine and maintains its principal place of business in Quincy, Massachusetts. *BCC Crosscl.* ¶ 6. GB purchased the Property from BCC in November 2022. *Id.*

Plaintiff RCI sued BCC, GB, and the Shareholder Defendants for damages and a declaratory judgment relating to the alleged breach of a Resort Affiliation and Owners Association Agreement (the 1995 Agreement) executed on or about November 27, 1995 between RCI, BCC, and Fairway Townhouse II, an owners association. *Id.* ¶ 9. RCI's amended complaint alleges that GB breached the 1995 Agreement by refusing to honor its obligations to book RCI exchange guests and members. *Id.* ¶ 10.

RCI alleges that GB was honoring the terms of the 1995 Agreement prior to October 2023. *Id.* ¶ 11. RCI additionally avers that BCC breached the 1995 Agreement by failing to transfer its obligations under the 1995 Agreement to GB. *Id.* ¶ 12. RCI claims further that the Shareholder Defendants are liable for BCC's breach of the 1995 Agreement because they caused BCC to be dissolved and then distributed its assets, notwithstanding the fact that BCC continued to have contractual obligations to RCI under the 1995 Agreement. *Id.* ¶ 13.

"To the extent the 1995 Agreement affects the Fairway Townhouse Timeshares (the 'Timeshares'), the Timeshares were created in 1997 by the Fairway Townhouses Owners' Association (the 'Association') by virtue of amending its declaration of

condominium and adopting of supplemental timeshare declarations ('Timeshare Declarations'), which are recorded in the Registry of Deeds." *Id.* ¶ 14. Upon the creation of Timeshares, "BCC transferred all of its management responsibilities over Timeshares to the Association, and the Association assumed the obligations to govern the use of timeshare units." *Id.* ¶ 15.

Pursuant to the Timeshare Declarations, condominium unit owners electing to convert their unit into timeshares were required to submit and record a Fairways Townhouses Condominium Submission of Units to Timeshare Declaration (Submission), which are publicly recorded in the Registry of Deeds. *Id.* ¶ 16. The Timeshare Declarations provide that condominium unit owners appoint a Timeshare Manager as Attorney in Fact, who will be responsible for the maintenance and administration of each Timeshare unit. *Id.* ¶ 17.

BIC recorded a Submission which designated BCC as Timeshare Manager for three units then owned by BIC. *Id.* ¶ 18; *Connors Crosscl.* ¶ 21. Each Submission agreed that "Timeshare Estates established pursuant to the Submission shall be subject to the provisions of the Timeshare Declaration and to the provision of the Ownership Agreement," and incorporated by reference a Timeshare Ownership Agreement (Timeshare Agreement) which each purchaser of a Timeshare Estate was required to execute. *Id.* ¶ 19.

Paragraph 11 of the Timeshare Agreement, titled "Membership in Resort Condominiums International ('RCI')," states:

> The Resort shall pay the initiation fee and first year dues of the Timeshare Owner in RCI's Exchange Program.   Thereafter, the Timeshare Owner may, at the Timeshare Owner's option, continue his or her participation in the exchange program, but in such event shall be solely responsible for performing all obligations of the exchange program.   The Resort shall not be responsible for collecting any fee or other charges associated with the exchange program.   The Timeshare Owner acknowledges that any such fee or other charge is not included in the annual fee required to be paid hereunder.

*Id.* ¶ 20.

In 2017, the Fairway Townhouse Owners' Association "amended and restated their Documents, including the Timeshare Agreements (the 'Amended Documents')." *Id.* ¶ 22.  The "Amended Documents" are recorded in the Registry of Deeds.  *Id.*  The Amended Documents "contemplate the ability of any timeshare owner to 'exchange or lend the use' of a timeshare unit, and the delegation of use to anyone allowed by the Association."  *Id.* ¶ 23.  The Amended Documents further designate BCC as the Timeshare Manager for all timeshare units within the Association.  *Id.* ¶ 24.

## III.   THE PARTIES' POSITIONS

### A.   The Connors Crossclaim

Mr. Connors argues that on or about November 22, 2022, BIC, BCC, and GB executed a PSA pursuant to which "GB purchased all assets held by BIC and BCC, including but not limited to all Land, Resort Owned Timeshare Units, and Timeshare Agreements."  *Connors Crosscl.* ¶ 8.  At the deal's closing on or around December 21, 2022, Mr. Connors avers, BIC and BCC collectively "conveyed to GB by deed all real estate interests subject to the terms of any declarations of covenants and matters of

8

record, any individual timeshare units then owned by BIC, and any residual interest [BIC or BCC] may have had in the timeshare and condominium units." *Id.* ¶ 9.

Mr. Conners then asserts that, by accepting the deed for individual timeshare units, GB "assumed all timeshare unit documents, including any Timeshare Agreement, provisions regarding associations, declarations, supplemental declarations, and any instruments of record recorded thereto." *Id.* ¶ 10, 16. In support, Mr. Connors points to the "Assignment and Assumption of Timeshare," signed by GB, "which listed as Exhibit A the Timeshare Agreements." *Id.* ¶ 17.

By assuming the Timeshare Agreements, Mr. Connors contends that GB "knew or should have known of any obligations it owed to RCI under RCI's Exchange Program." *Id.* ¶ 18. According to Mr. Connors, under Recital D and § 3.6 of the 1995 Agreement, BCC agreed to perform certain management duties "until [BCC] transferred its management responsibilities to [Fairway Townhouse II] Association." *Id.* ¶ 19. As required by the Timeshare Declaration, BIC designated BCC as its Timeshare Manager, a position which, under the Declaration, occupied the role of Attorney in Fact with responsibility for maintenance of each unit and administration of the units submitted as timeshares. *Id.* ¶¶ 20-21. Upon creating the timeshares, BCC transferred its management responsibilities over its timeshare units to the Association. *Id.* ¶ 22.

When GB purchased the assets of BCC and BIC, GB "required Crossclaim Plaintiff [Connors] to resign as officer and clerk of the Association and assumed control over the Association," at which point it also took over management of the

Association. *Id.* ¶¶ 23-24. Mr. Connors argues that any management responsibilities under the 1995 Agreement are the obligation of the Association, which is controlled by GB. *Id.* ¶ 25.

Mr. Connors asserts that § 7.5.2 of the PSA "requires GB to indemnify BCC and its [shareholders] for all damages paid or incurred by GB's operations of the property following the Closing Date … and any breaches of … the Timeshare Agreements, liabilities to third parties, and the Assumed Contracts," as those terms are described in the PSA. *Id.* ¶ 26.

Mr. Connors reads RCI's amended complaint as alleging that GB no longer intends to honor its obligations under the 1995 Agreement, obligations Mr. Connors contends that GB assumed through the PSA. *Id.* ¶ 27. Mr. Connors concludes that "[b]ecause RCI seeks to hold [BCC] and its shareholders liable for action attributable to GB that postdate the Closing Date of the PSA, RCI has an obligation to indemnify BCC and its Principals [shareholders]." *Id.* ¶ 28.

Further, in the event he is found liable to RCI, Mr. Connors asserts that "he is entitled to contribution and/or indemnification from GB in an amount equal to the proportion of GB's fault." *Id.* ¶ 29.

**B.    BCC and the Shareholder Defendants' Crossclaim**

Like Mr. Connors, the BCC Crossclaimants posit that GB "assumed all timeshare unit documents, including any Timeshare Agreements, Amended Documents, provisions regarding associations, declarations, supplemental declarations, and any interests of record recorded thereto … [b]y acceptance of the

10

deed for individual timeshare units." *Id.* ¶ 28.  BCC Crossclaimants allege that, upon closing, BIC assigned all rights, title, and interests in the Fairway Townhouses to GB; this assignment is recorded in the Registry of Deeds.  *Id.* ¶ 29.

According to BCC Crossclaimants, because GB assumed the Timeshare Agreements, GB thus "knew or should have known of the RCI Exchange Program and any obligations it owed to RCI or any Timeshare Owner with respect to, in connection with, or under RCI's Exchange Program." *Id.* ¶ 30.  The BCC Crossclaimants argue further that GB's assumption of the Timeshare Agreements included the Amended Documents, and that GB "knew or should have known of any obligations it owed to RCI or any Timeshare Owner with respect to, in connection with, or under RCI's Exchange Program" through these documents as well.  *Id.* ¶¶ 31-32.

BCC Crossclaimants aver that GB "has failed to fulfill its obligations as Timeshare Manager pursuant to the Amended Documents by disallowing the exchange of timeshare units." *Id.* ¶ 33.

For this alleged breach, BCC Crossclaimants argue that GB is required to indemnify BIC, BCC, and their individual shareholders against "Damages" paid or incurred by the indemnified parties pursuant to § 7.5.2 of the PSA.[2]  *Id.* ¶ 34.

---

[2]     The BCC crossclaim references Section 1.1.12 of the PSA, which defines "Damages" as:

[A]ll Liabilities, demands, claims, actions or causes of action, regulatory, legislative or judicial proceedings or investigations, assessments, levies, losses, fines, penalties, damages, costs and expenses, including, without limitation: reasonable attorneys', accountants', investigators', and experts' fees and expenses, … sustained or incurred in connection with the defense or investigation of any claim subject to indemnification hereof, but expressly excluding lost profits, consequential and punitive damages (except to the extent awarded to a third party in connection with a third party claim).

According to BCC Crossclaimants, § 7.5.2 encompasses damages arising from a breach of Timeshare Agreements or the Assumed Contracts, as well as liabilities to third parties resulting from GB's use or operations of the Property after closing.[3]  *Id.*  BCC Crossclaimants argue that they "fulfilled their obligations under the PSA by promptly notifying GB of the claims brought by RCI, requesting indemnification, and offering GB the opportunity to defend and their general cooperation in the defense." *Id.* ¶ 37. They say that GB refused their request for indemnification.  *Id.* ¶ 38.

BCC Crossclaimants conclude by arguing that the PSA constitutes a valid and enforceable contract, *id.* ¶ 40, pursuant to which GB knowingly assumed BCC's obligations to RCI.  *Id.* ¶ 41.  According to BCC Crossclaimants, RCI's allegations against Defendants in the underlying dispute "arise out of Giri Bangor's failure to honor its obligations to book RCI exchange guests and members, in violation of the Timeshare Agreement, the Assumed Contracts, and the Amended Documents," a violation which caused liability to third parties (RCI) "resulting from GB's use or operations of [the Property] after closing."  *Id.* ¶ 42.

---

*BCC Crosscl.* ¶ 35.

[3]        The BCC crossclaim references Section 1.1.31 of the PSA, which defines "Liabilities" as:

> [A]ny direct or indirect liability, duty, or obligation of any kind or nature whatsoever, however designated (including strict, joint and several liability), equitable or injunctive remedies or relief, response costs, indebtedness, guaranty, endorsement, claim, loss, damage, deficiency, cost, expense, obligation, or responsibility, either accrued, absolute, contingent, mature, unmature, or otherwise and whether known or unknown, fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured.

*Id.* ¶ 36.

BCC Crossclaimants assert that GB's refusal to indemnify them constitutes a material breach of the PSA. *Id.* ¶ 43. BCC Crossclaimants allege: (1) they have duly performed their obligations under the PSA, *id.* ¶ 44, (2) GB's breach of the PSA harmed BCC Crossclaimants by "depriving them of the essential benefits of the PSA and causing them to incur expenses associated with defending against RCI's claims and pursuing indemnification," *id.* ¶ 45, and (3), as a direct and proximate result of GB's breach, BCC Crossclaimants are entitled to damages "for all losses, attorneys' fees, costs, and interests incurred both in defending RCI's claims and pursuing crossclaims against GB, and any other relief the Court deems just and proper." *Id.* ¶ 46.

### C.     Giri Bangor, LLC's Motion to Dismiss

#### 1.     The Breach of Contract Claim

GB moves to dismiss the crossclaims filed against it by Mr. Connors (Connors crossclaim) and by BCC and the Shareholder Defendants (BCC crossclaim). *Mot. to Dismiss* at 1. GB argues that both crossclaims should be dismissed pursuant to Rule 12(b)(6) because "the crossclaims do not allege facts in support of a legal theory that could entitle the crossclaim plaintiffs to relief." *Id.* The motion to dismiss describes the "core allegations in the two crossclaims" as "essentially the same" and responds to them collectively.[4] *Id.*

---

[4]     The motion to dismiss states that the BCC crossclaim describes RCI's allegations against Crossclaimants as "aris[ing] out of GB's alleged failure to honor its obligations to book RCI exchange guests and members, in violation of the Timeshare Agreements, the Assumed Contracts, and the Amended Documents." *Mot. to Dismiss* at 2 (citing *BCC Crosscl.* ¶ 42). The motion to dismiss states

The motion to dismiss says that "[t]he striking thing about the crossclaims is that despite seeking indemnification from RCI's claims against BCC and its principals, the crossclaims describe the basis for RCI's underlying claim differently than how RCI frames it in the Amended Complaint." *Id.* at 3. The motion to dismiss states that "RCI's underlying claim against BCC is that BCC breached its contract with RCI by failing to assign BCC's contractual obligations to RCI under the 1995 Agreement to GB." *Id.* (citing *Am. Compl.* ¶ 45). The motion to dismiss interprets RCI's underlying claim against GB as an allegation that GB assumed, and then breached, BCC's obligations under the 1995 Agreement. *Id.* GB asserts:

> There is good reason why the crossclaims frame the wrong that is alleged to have been committed by GB differently than the way RCI's underlying complaint frames it: RCI's claim against GB rests on GB having assumed BCC's obligations to RCI under the 1995 Agreement, and it is clear on the face of the [PSA] that GB did not in fact assume that contract.

*Id.* at 4. Thus, GB says, the crossclaims characterize GB's alleged wrong "not as a breach of the 1995 Agreement (RCI's underlying claim), but instead as a breach of 'the Timeshare Agreements, the Assumed Contracts, and the Amended Documents'." *Id.* at 4 (citing *BCC Crosscl.* ¶ 42; *Connors Crosscl.* ¶ 26) (describing the Connors crossclaim as the "same except omit[ting] 'Amended Documents'").

GB takes issue with this characterization because "[t]he crossclaims never explain how 'GB's alleged failure to honor its obligations to book RCI exchanges guests and members' could constitute a violation of the Timeshare Agreements, or

---

that the claim advanced by the Connors crossclaim is the same except that it does not cite the "Amended Documents." *Id.* at 3 (citing *Connors Crosscl.* ¶ 26).

the Assumed Contracts, or the Amended Documents." *Id.* at 4 (citing *BCC Crosscl.* ¶ 42). According to GB, this point requires explanation because there are "hundreds of Timeshare Agreements," "over two dozen contracts that GB could have assumed," and the Amended Documents "exceed 50 pages" and do not refer to RCI.[5] *Id.* at 4-5 (internal citations omitted). The crossclaims "allude generally to this universe of materials," GB says, "without saying what obligation in what document GB is alleged to have breached that could give rise to a right to indemnification." *Id.* at 5. The motion to dismiss further argues that the crossclaims fail to state what alleged wrong GB committed so as to "caus[e] liabilities to third parties – RCI – resulting from GB's use of operations of the Resort after closing." *Id.* (citing *BCC Crosscl.* ¶ 42).

GB asserts the Crossclaim Plaintiffs do not meet the standard of pleading necessary to survive Rule 12(b)(6), under which "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 5 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). GB argues:

> It is not enough for BCC and its principals to assert generically that "GB's alleged failure to honors its obligations to book RCI exchange

---

[5]   The motion to dismiss states:

While "[o]rdinarily, a court may not consider any documents that are outside of the complaint" in ruling on a motion to dismiss, there is an "exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."

*Mot. to Dismiss* at 5 n.1 (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The motion to dismiss argues that the PSA is "central to the crossclaims, as it contains the indemnification provision (§ 7.5.2) on which the crossclaims are based," and that the Amended Documents are "also central" to the BCC crossclaim because the BCC crossclaim "alleges … that (unspecified provisions of) the Amended Documents have been breached." *Id.*

15

guests and members" constitutes a violation of the Timeshare Agreements, or the Assumed Contracts, or the Amended Documents, without providing at least some barebones indication of *how* that alleged conduct would have violated those agreements and documents.

*Id.* at 5-6 (emphasis in original).  Nor is it sufficient, the motion to dismiss continues, "to plead that GB 'caus[ed] liabilities' to RCI 'resulting from GB's use of operations of the Resort after closing' without explaining, at least in general terms, what actual conduct by GB is alleged to have created liabilities to RCI."  *Id.* at 6.  GB argues this is an insufficient statement of "the grounds of [the Crossclaim Plaintiffs'] entitle[ment] to relief."  *Id.* (citing *Twombly*, 550 U.S. at 555).

GB states that, to the extent the crossclaims rest on GB having breached the 1995 Agreement between BCC and RCI (the basis for RCI's underlying complaint), the crossclaims cannot succeed because they do not allege facts that would suggest that GB assumed or is otherwise bound by the 1995 Agreement.  *Id.*  This is because, GB argues, BCC "never assigned the 1995 Agreement to Giri Bangor, and the crossclaims do not allege that it did."  *Id.*

In support, GB points to PSA § 5.5(a).  Pursuant to this provision, GB argues that it "had the opportunity to review BCC's contracts and decide which ones it would assume."  *Id.*  The PSA provides that:

Seller [BCC] shall provide to Purchaser [GB] a list and copies of all Contracts that relate to the Property.  At least five (5) days prior to the Closing Date, Purchaser shall provide notice to Seller which of the same that Purchaser desires to assume and only those Contracts identified by Purchaser will be assigned and assumed.

16

*Id.*  GB posits, "[a]s BCC did not include the 1995 Agreement on the list of contracts for GB to review and decide whether to assume, GB could not have assumed that contract." *Id.* at 7.  GB includes further language from § 5.5(a) which it claims "makes unmistakably clear, '[f]or the avoidance of doubt,' that 'any Contracts not assigned by Seller and assumed by Purchaser pursuant to the [PSA] shall be considered an Excluded Contract and Seller shall cause all of the Excluded Contracts to be terminated . . . without cost or liability to Purchaser.'" *Id.* (quoting *Mot. to Dismiss*, Attach. 1, *Agreement of Purchase and Sale*, at 16 (ECF No. 32) (*PSA*).  GB argues that BCC represented and warranted to GB through § 3.9 of the PSA that "[t]here are no Contracts that will affect the Property ... except for the Timeshare Agreements, the Tower Lease and the Contracts as set forth on Schedule 3.9,' which does not list the 1995 Agreement." *Id.* (quoting *PSA* at 9-10).

GB says that, contrary to this plain language in the PSA, the crossclaims allege "[b]y GB assuming the Timeshare Agreements, it knew or should have known' of 'any obligations it owed to RCI." *Id.* (citing *BCC Crosscl.* ¶ 30; *Connors Crosscl.* ¶ 18). This argument, GB argues, is insufficient because the PSA specified a process by which BCC was first to provide GB with a list of its contracts and GB would then decide which ones to assume.  *Id.*  Because BCC did not include its 1995 Agreement with RCI on this list, BCC and its shareholders "are in no position now to claim that RCI 'should have known' about, or somehow inferred, its existence." *Id.*

Based on the foregoing, GB concludes that the crossclaims fail to establish either form of requested relief: contribution or indemnification.  *Id.*  at 7-8.  GB first

argues that contribution is not available because it "is a right that exists between joint tortfeasors" and the parties here are not alleged to be joint tortfeasors. *Id.* (citing *Johanson v. Dunnington*, 2001 ME 169, ¶ 10, 785 A.2d 1244, 1247). GB then contends that the crossclaims also fail to establish a claim for contractual indemnification because they did not "identify and allege an act or omission by GB for which [the Crossclaimants] are entitled to indemnification" under the PSA, and thus "fail to allege an actual factual basis for indemnification." *Id.* at 8.

### D.   Bethel Commodore Corp., LLC, Missy Rasor, Kerry Rasor, Kathy Rasor, Estate of Richard Drew Rasor, and Allen Connors' Joint Opposition to Giri Bangor, LLC's Motion to Dismiss Crossclaims

Crossclaim Plaintiffs begin by reasserting that PSA § 7.5.2 requires GB to indemnify BCC for damages due to "liabilities to any third party that are based upon any matter relating to the use, maintenance, operation or construction of the Property arising from [GB]'s actions at the Property following the Closing Date." *Resp. in Opp'n* at 2 (quoting *BCC Crosscl.* ¶ 34). Crossclaim Plaintiffs then submit that BCC incurred potential liabilities to RCI arising from GB's use and operation of the Property following the closing date, namely relating to GB's failure to continue providing timeshare exchanges. *Id.* at 3. Thus, Crossclaim Plaintiffs argue, the crossclaims allege sufficient facts to state a plausible claim against GB for indemnification under the PSA. *Id.*

Crossclaim Plaintiffs next opine that GB "attempts to distract the Court by arguing that BCC 'describe[s] the basis for RCI's underlying claim differently than how RCI frames it in the Amended Complaint.'" *Id.* at 3. The manner in which RCI

18

frames its claims in its amended complaint is "irrelevant," Crossclaim Plaintiffs say, because it "does not absolve [GB] from having to indemnify BCC for [GB's] own actions relating to the use and operation of the Property after closing." *Id.* Whether or not the 1995 Agreement is enforceable, the Crossclaimants argue, RCI's lawsuit against BCC arises directly from GB's use and operation of the Property after the closing date; the bases for the crossclaims are thus consistent with RCI's allegations because GB was required to continue providing timeshare exchanges and it neglected to do so, causing RCI to sue BCC and triggering the indemnification provision in the PSA. *Id.*

The Crossclaimants next assert that GB "incorrectly conflates the basis for its own crossclaim against BCC – that BCC allegedly failed to include the 1995 Agreement in the list of Assumed Contracts and therefore should indemnify [GB] – with the bases for BCC's Crossclaims against [GB]." *Id.* at 3-4. The BCC crossclaim depends on GB assuming the obligation to RCI to continue providing timeshare exchanges, an obligation the Crossclaim Plaintiffs argue that GB assumed under the Timeshare Agreements, the Assumed Contracts, and the Amended Documents. *Id.* at 4. The Crossclaimants argue that "[GB's] course of dealing shows that it was clearly aware of these obligations for some time [and] then chose to breach those obligations," causing RCI to file its amended complaint. *Id.*

In response to GB's argument that the crossclaims "never explain how '[GB]'s alleged failure to honor its obligations to book RCI exchange guests and members' could constitute a violation of the Timeshare Agreements, or the Assumed Contracts,

19

or the Amended Documents," the Crossclaim Plaintiffs state that the crossclaims "explain this quite clearly": first, "the Timeshare Agreements are violated by [GB's] failure to book exchange guests and members because the Timeshare Agreements guarantee "Membership in Resort Condominiums International ('RCI')" which allows "Timeshare Owners …, at the Timeshare Owner's option, [to] continue his or her participation in [RCI's] exchange program." *Id.* (for former, quoting *Mot. to Dismiss* at 4) (for latter, quoting *BCC Crosscl.* ¶ 20).  Second, Crossclaimants assert that "the Assumed Contracts include the Timeshare Agreements, meaning that a violation of the Timeshare Agreement is a violation of the Assumed Contracts." *Id.* (citing *BCC Crosscl.* ¶ 26).  Crossclaim Plaintiffs allege, third, that the Amended Documents contemplate the ability of any timeshare owner to "exchange or lend the use" of a timeshare unit, and the delegation of use to anyone allowed by the Association." *Id.* at 4-5. (citing *BCC Crosscl.* ¶ 23).  Crossclaimants conclude that GB's "refusal to honor its obligations to book exchanges prevents timeshare owners from 'exchanging or lending the use' of their unit"; this is a breach of GB's obligations pursuant to the PSA, obligations which GB assumed upon closing and which required GB to continue to perform as part of its use and operation of the Property.  *Id.* at 5. (citing *BCC Crosscl.* ¶¶ 25, 26, 28, 30-32)

In response to GB's contention that BCC does not "reveal what [GB] is alleged to have done wrong to 'caus[e] liabilities to third parties – RCI – resulting from GB's use of operations of the Resort after closing," Crossclaim Plaintiffs argue that the crossclaims "again … clearly explain this" because "[GB's] obligations under the

Timeshare Agreements, Assumed Contracts, and Amended Documents are the same obligations under the 1995 Agreement that are allegedly being breached [in the underlying litigation]" – refusing to honor its obligations to book timeshare exchanges as part of its use and operation of the Property." *Id.* (for former, citing *Mot. to Dismiss* at 5) (for latter, citing *BCC Crosscl.* ¶ 42. Crossclaimants argue:

> It is RCI's litigation *itself* that requires [GB] to indemnify BCC under [PSA § 7.5.2] because the litigation imposes the risk of "liabilities to any third party that are based upon any matter relating to the use … [or] operation … of the Property arising from [GB]'s actions at the Property following the Closing Date."

*Id.* (emphasis in original) (citing *BCC Crosscl.* ¶¶ 34, 42-45) (quoting *PSA* at 22).

Finally, in response to GB's claim that the crossclaims fail to identify "what actual conduct by [GB] is alleged to have created liabilities to RCI," *Mot. to Dismiss* at 6, the Crossclaim Plaintiffs state: "[t]his is very simply laid out in BCC's Crossclaims: RCI's claims against BCC arise out of [GB] breaching its obligations to book RCI exchange guests and members and have caused BCC to potentially be liable to RCI." *Resp. in Opp'n* at 5 (citing *BCC Crosscl.* ¶¶ 10, 33, 42).

Based on the foregoing, the Joint Opposition requests that the Court deny GB's motion to dismiss because the Crossclaimants "ha[ve] pled factual allegations that set forth plausible claims for indemnification based on [GB]'s breach of contract (i.e.[,] the PSA) under Maine law." *Id.* at 5-6 (citing *Estes v. Smith*, 521 A.2d 682 (Me. 1987)).

21

###### E.       Giri Bangor's Reply

GB argues that the crossclaims should be dismissed because they "do not allege a basis for holding GB liable for contribution or indemnification." *Reply* at 5. GB says that "[t]he problem with BCC's crossclaim is straightforward: it seeks to hold GB responsible for fulfilling obligations BCC assumed in its 1995 Agreement with RCI, despite the fact that GB did not assume that contract under the PSA." *Id.* at 1. GB further argues that because the BCC crossclaim "does not allege … that GB assumed the 1995 Agreement – which would be the only way it could be enforceable against GB . . . BCC is therefore in no position to complain that GB has not stepped into BCC's shoes with respect to the 1995 Agreement." *Id.* at 1-2. GB restates that BCC did not follow the process, as laid out in PSA § 5.5(a), of assigning the 1995 Agreement to GB. *Id.* at 2. GB also restates that BCC "even specifically represented that '[t]here are no Contracts that will affect the Property … except for the Timeshare Agreements, the Tower Lease and the Contracts as set forth on Schedule 3.9' – which does not list the 1995 Agreement." *Id.* (quoting *PSA* at 9-10).

Thus, GB contends, the sole basis for the Crossclaimants' contention that GB is obligated to book RCI exchange guests and members is that it violates the Timeshare Agreements and thus may expose BCC to "liabilities to any third party that are based upon any matter relating to the use, maintenance, operation or construction of the Property arising from [GB's] actions at the Property following the Closing Date." *Id.* (citing *Resp. in Opp'n* at 2-3) (quoting *PSA* at 22).

22

GB argues the language cited in the BCC crossclaim, "even if it appears in every one of the Timeshare Agreements, does not create an obligation that binds GB" because the provision of the Timeshare Agreements that BCC relies on "does not require GB to do anything." *Id.* at 2-3.  The language BCC relies on in Paragraph 11 "does not 'guarantee' GB's participation in the RCI exchange program," GB says, because "Membership in Resort Condominiums International" is "not framed as a 'guarantee,' but instead simply identifies the subject matter of the paragraph, which is how timeshare owners become members in the RCI exchange program." *Id.* at 3. Instead of imposing a further obligation on BCC and GB, GB insists the paragraph BCC relies on "makes clear that a Timeshare Owner who elects to continue 'shall be solely responsible for performing all obligations of the exchange program.'" *Id.* Nothing in Paragraph 11, GB concludes, obligated BCC and, later, GB, to continue to participate in the RCI exchange program. *Id.*  BCC's obligations to the exchange program "are instead set forth in the 1995 Agreement with RCI – a contract RCI does not allege GB assumed." *Id.*

In response to the Crossclaimants' argument that, by assuming the Timeshare Agreements, GB "knew or should have known of the RCI Exchange Program and any obligations it owed to RCI or any Timeshare Owner with respect to, in connection with, or under RCI's Exchange Program," GB says the Crossclaimants do not allege sufficient facts to support their contention that the Timeshare Agreements create obligations on BCC and GB to RCI under its exchange program. *Id.* at 3-4.  This is because, GB says, (1) "the actual agreement that creates the obligation at issue here

was not assumed by GB," and (2) BCC "specifically represented that no such agreement existed" under PSA § 3.9, which did not enumerate the 1995 Agreement. *Id.* (citing *PSA* at 9-10).

GB requests that the Court reject Crossclaimants' "attempt to sneak in through the back door the assignment and assumption of contractual obligations that it chose not to make part of its deal with GB when it had the chance to" and dismiss the crossclaims as failing to allege a basis for holding GB liable for contribution or indemnification. *Id.* at 4.

## IV.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

The Crossclaim Defendant relies on Federal Rule of Civil Procedure 12(b)(6), which requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017)

24

(internal citation omitted) (quoting *Schatz*, 669 F.3d at 55); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)).  This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

The Court begins by addressing a preliminary issue, the scope of the record. "Ordinarily, a court ruling on a motion to dismiss may only consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief*." James D. Julia, Inc. v. Dan Murphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *21 (D. Me. June 21, 2021) (citing *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020)).  Here, the amended complaint

25

neither refers to nor attaches either the PSA or the 2017 amendment to the Timeshare Agreement. *See Am. Compl.* ¶¶ 1-70. Nevertheless, Mr. Connors, GB, and BCC refer explicitly in their pleadings to the PSA and the Timeshare Agreement. *Connors Crosscl.* ¶¶ 8-28; *GB Third Party Compl. and Crosscl.* ¶¶ 12-64; *BCC Crosscl.* ¶¶ 25-46.

Furthermore, GB attached to its motion to dismiss the full text of the PSA and the 2017 amendment to the Timeshare Agreement. *See PSA.* The parties have submitted arguments about the language of these agreements in favor of and against the pending motion to dismiss, and the Court has accepted the authenticity of those documents for purposes of ruling on the motion. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (when, as now, "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

As the breach of contract claim currently before the Court turns on the terms of the PSA and the Timeshare Agreement, the Court considers the contract attached by GB, which it admits is authentic and Crossclaimants do not challenge. *See PSA* at 1-106; *Timeshare Agreement* at 1-58.

## A.    Breach of Contract

"Under Maine law, to recover under a breach of contract claim, a plaintiff must establish (1) breach of a material contract term; (2) causation; and (3) damages." *Tate*

26

& *Lyle Ingredients Ams., Inc. v. Transp. Distrib., LLC*, 746 F. Supp. 2d 189, 196 (D. Me. 2010) (quoting *BlueTarp Fin., Inc. v. E. Materials Corp.*, Civil No. 08-324-P-S, 2009 U.S. Dist. LEXIS 66672, at *57 (D. Me. July 24, 2009); *accord Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 ("In order to obtain relief for a breach of . . . contract, the plaintiff must . . . demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages").

Specifically at issue here is whether the PSA gives rise to indemnification and/or contribution obligations in favor of BCC and the Shareholder Defendants. First, however, the Court must address the scope of the issues presently before it. Although both crossclaims assert as a fact that GB assumed BCC's obligations under the PSA, in ruling on a motion to dismiss courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In this lawsuit for damages based on an alleged breach of contract, whether a purchaser stepped into a seller's shoes in that contract is a contested and material question of law. GB says it did not assume BCC and the Shareholder Defendants' obligations to RCI under that contract, while BCC and the Shareholder Defendants assert the opposite.

While this is an open question of law, it is not one that is proper for the Court to resolve at this stage. Mr. Connors filed only a general crossclaim and did not divide his crossclaim into separate counts, which would have allowed separate treatment at the motion to dismiss stage of separate theories of viability. *See Connors Crosscl.* ¶¶ 1-30. Similarly, the BCC crossclaim contains a single count of breach of contract. *See*

27

*BCC Crosscl.* ¶¶ 1-46.  Since neither Mr. Connors nor the BCC Crossclaimants divided their respective crossclaim into separate counts, the Court does not now do so to determine whether the crossclaims survive GB's motion to dismiss.

The Court's approach to the present motion does not reflect a determination that GB did not raise significant questions about whether it in fact assumed BCC's obligations to RCI under PSA § 5.5(a) and PSA § 3.9, or about the Crossclaim Plaintiffs' broader theory of assignment of the Timeshare Agreements, Assumed Contracts, and Amended Documents.  Rather, the Court's analysis is limited to the contours of the issue currently before it: whether the Crossclaimants pleaded sufficient facts to state a plausible claim against GB for indemnification and/or contribution.  *See Twombly*, 550 U.S. at 555.  As the Court can answer this question without deciding whether GB assumed BCC's obligations to RCI under the PSA, it would be an unconstitutional advisory opinion for the Court to do so here.

Having addressed this preliminary matter, the Court now turns to the question of indemnification.

### 1.    Whether GB is Liable to Crossclaimants for Indemnification

To determine whether GB is liable to BCC for indemnification in the underlying litigation, the Court relies on the four corners of the PSA.  *See Keep v. Indorf*, 2024 ME 14, ¶ 22, 314 A.3d 141.  "The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence."  *Id.* (quoting *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)).

Crossclaimants assert that GB is required to indemnify BIC, BCC, and their individual shareholders pursuant to § 7.5.2 of the PSA.  *Resp. in Opp'n* at 2.  In its entirety, § 7.5.2 states:

> Subject to any express provisions of this Agreement to the contrary, from and after Closing, Purchaser may indemnify Seller and Principals and their respective directors, officers and employees, partners, members and affiliates (collectively, "Seller Indemnified Parties") and shall hold Seller Indemnified Parties harmless from and against, any and all Damages paid or incurred by Seller Indemnified Parties due to (i) any breach of any representation or warranty made by Purchaser or Purchaser's Designee in this Agreement or any of the Transaction Documents, and (ii) any breach of any covenant to be performed from and after Closing by Purchaser or Purchaser's Designee pursuant to any of the Transaction Documents, (iii) the Timeshare Agreements, (iv) liabilities to any third party that are based upon any matter relating to the use, maintenance, operation or construction of the Property arising from Purchaser's actions at the Property following the Closing Date; [and] (v) the Assumed Contracts.

*PSA* at 22.  Crossclaimants allege that BCC incurred potential liabilities to RCI arising from GB's use and operation of the Property following the closing date, namely relating to GB's failure to continue providing timeshare exchanges.  *Resp. in Opp'n* at 3.  The BCC crossclaim argues that Crossclaimants "fulfilled their obligations under the PSA by promptly notifying GB of the claims brought by RCI, requesting indemnification, and offering GB the opportunity to defend and their general cooperation in the defense."  *Id.* ¶ 37.  They assert that GB refused their request for indemnification.  *Id.* ¶ 38.  Based on the foregoing, the Crossclaimants argue that GB's refusal to indemnify them constitutes a material breach of the PSA which has directly and proximately caused Crossclaimants to incur recoverable damages "for all losses, attorneys' fees, costs, and interests incurred both in defending RCI's claims

and pursuing crossclaims against GB, and any other relief the Court deems just and proper." *Id.* ¶¶ 43-46.

GB counters that the Crossclaimants fail to establish a claim for contractual indemnification because they did not identify and allege an act or omission by GB for which the Crossclaimants are entitled to indemnification under the PSA, and thus "fail to allege an actual factual basis for indemnification." *Mot. to Dismiss* at 8.

The Joint Opposition responds that "[i]t is RCI's litigation *itself* that requires [GB] to indemnify BCC under [PSA § 7.5.2] because the litigation imposes the risk of 'liabilities to any third party that are based upon any matter relating to the use … [or] operation … of the Property arising from [GB]'s actions at the Property following the Closing Date." *Resp. in Opp'n* at 5 (emphasis in original) (citing *BCC Crosscl.* ¶¶ 34, 42-45).

On this point, the Court concludes that Crossclaimants, pursuant to § 7.5.2, have provided "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Based on the plain language of PSA § 7.5.2, GB promised to indemnify BCC for, among other things "(iv) liabilities to any third party that are based upon any matter relating to the use, maintenance, operation or construction of the Property arising from Purchaser's actions at the Property following the Closing Date." *PSA* at 22. Here, RCI's breach of contract claims against BCC, as pleaded, are based on GB's operation of the Property following closing. Thus, the Court finds the Crossclaimants to have provided sufficient "grounds" of their "entitle[ment] to

relief" to indemnification for the underlying dispute pursuant to § 7.5.2.  *See Twombly*, 550 U.S. at 555.

> ### 2.    Whether GB is Liable to Crossclaimants for Contribution

Crossclaimants also argue that, in the event Defendants are found liable to RCI in the underlying action, they are entitled to contribution from GB under the terms of the PSA.  *Connors Crosscl.* ¶¶ 26-29; *BCC Crosscl.* ¶ 12.

GB's response is that contribution is not available because this right exists only between joint tortfeasors and the parties in the present action are not alleged to be joint tortfeasors.  *Mot. to Dismiss* at 7-8 (citing *Johanson*, 2001 ME at ¶ 10).

Crossclaimants did not respond to this argument in their Joint Opposition.

Because the Court has concluded that the crossclaims survive the motion to dismiss on the issue of indemnification, it does not now reach the issue of contribution.   As discussed above, the Court's approach does not reflect its determination that the Crossclaim Defendant did not raise a material question about the viability of the Crossclaim Plaintiffs' arguments regarding their right to contribution.   Rather, the Court's approach follows the contours of the narrow question presented at the motion to dismiss stage: whether the Crossclaim Plaintiffs have pleaded sufficient facts to survive dismissal.

## VI.    CONCLUSION

The Court DISMISSES without prejudice Crossclaim Defendant Giri Bangor, LLC's Motion to Dismiss Crossclaims with Incorporated Memorandum of Law (ECF No. 32).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2024